**Electronically Filed
Supreme Court
SCWC-17-0000829
20-DEC-2019
08:16 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

KAOHULANI MEDEIROS,
Petitioner/Defendant-Appellant.

SCWC-17-0000829

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000829; CASE NO. 2CPC-17-0000158)

DECEMBER 20, 2019

RECKTENWALD, C.J., McKENNA, POLLACK, AND
WILSON, JJ.; WITH NAKAYAMA, J., CONCURRING SEPARATELY

OPINION OF THE COURT BY RECKTENWALD, C.J.

In 1976, the legislature enacted Hawaiʻi Revised
Statutes (HRS) Chapter 853 to allow for the deferred acceptance
of guilty (DAG) pleas.  The legislature thereby sought "to
establish a means whereby a court in its discretion may defer
acceptance of a guilty plea for a certain period on certain

conditions with respect to certain defendants[,] . . . result[ing] in the discharge of the defendant and expungement of the matter from [the defendant's] record."  1976 Haw. Sess. Laws Act 154, § 1 at 279.  The legislature later amended HRS Chapter 853 to allow for deferred acceptance of no contest (DANC) pleas.[1] 1983 Haw. Sess. Laws Act 290, § 1 at 617.

As the legislature explained, HRS Chapter 853 serves important policy goals and the availability of its benefits is specifically tailored in furtherance of those goals:

> [I]n certain criminal cases, particularly those involving first time, accidental, or situational offenders, it is in the best interest of the State and the defendant that the defendant be given the opportunity to keep [the defendant's] record free of a criminal conviction if [the defendant] can comply with certain terms and conditions during a period designated by court order.  Especially where youth is involved, a record free of a felony conviction, which would foreclose certain educational, professional, and job opportunities may, in a proper case, be more conducive to offender rehabilitation and crime prevention than the deterrent effects of a conviction and sentence.

1976 Haw. Sess. Laws Act 154, § 1 at 279.

HRS § 853-4 (2014 & Supp. 2018) sets forth the circumstances under which a defendant is ineligible to benefit from HRS Chapter 853.  One such circumstance is where the offense charged is nonprobationable.  HRS § 853-4(5).  In State v. Hamili, this court determined that Prohibited Fishing with Gill

---

[1]    Compare HRS § 853-1 (1977) with § HRS 853-1 (2014).  As discussed below, we note that motions for a deferred plea are to be treated similarly whether or not the underlying plea is guilty or no contest.

2

Nets was a nonprobationable offense because the use of the word

"shall" in the applicable sentencing provision indicated three

mandatory sentencing alternatives, none of which allowed for a

term of probation.  87 Hawaiʻi 102, 107, 952 P.2d 390, 395

(1998).

This case requires us to revisit Hamili and to consider

the bounds of a trial court's discretion in granting or denying a

motion for a DANC plea.[2]  As discussed herein, we believe that

the legislature intended for the benefits of HRS Chapter 853 to

be broadly available to defendants, except where clearly

articulated, deliberate exceptions apply.  Applying those

principles here, we conclude that the underlying offenses at

issue in this case are probationable and Hamili is hereby

overruled.

In addition, although the grant or denial of a motion

for a DANC plea is a matter within the discretion of the trial

court, in the instant case, the court erred in denying Kaohulani

Medeiros's motion for a DANC plea.  We therefore vacate the

Intermediate Court of Appeals' (ICA) Judgment on Appeal and the

Circuit Court of the Second Circuit's (circuit court) Judgment,

Conviction, and Probation Sentence, and remand the case to the

---

[2]     The concurring opinion contends that we are applying plain error review in our analysis.  Respectfully, that is incorrect.  It is of no import whether the State did or did not challenge Medeiros's eligibility for a DANC plea during the sentencing proceeding.  The circuit court would not have abused its discretion in denying the DANC plea if the offense was not eligible for a deferred sentence.  Thus, we are required to address this issue, including whether Hamili was properly decided.

circuit court for proceedings consistent with this opinion.

## I. BACKGROUND[3]

At around 9:30 p.m. on February 24, 2017, Department of Land and Natural Resources (DLNR) Officers John Yamamoto and Mark Chamberlain approached Medeiros on the side of Pi'ilani Highway on Maui, on suspicion that Medeiros may have been night hunting using artificial light, in violation of the Hawai'i Administrative Rules (HAR). Medeiros was dressed in a camouflage t-shirt and admitted to Officer Yamamoto that "he was spotlighting."[4] Officer Yamamoto seized a headlamp, an unloaded rifle, a magazine containing ammunition, and a case of bullets from Medeiros's truck.

The State charged Medeiros by Felony Information and Non-Felony Complaint with the following four counts:

Count I:    Place to Keep Unloaded Firearms Other Than Pistol and Revolvers, a class C felony, in violation of HRS § 134-24(a) (2011);

Count II:   Place to Keep Ammunition, a misdemeanor, in violation of HRS § 134-27(a) (2011);

---

[3] The facts contained herein are from the testimony of Department of Land and Natural Resources Officers John Yamamoto and Mark Chamberlain, elicited at a hearing on a motion that Medeiros filed to suppress all statements that he made to the officers, as well as evidence seized from his vehicle. The circuit court denied the motion. Medeiros did not testify at the hearing, and there was no trial in this case. Defense counsel cross-examined the officers, but did not offer any testimony or evidence to substantively contradict the officers' testimony.

[4] According to Officer Yamamoto, "spotlighting" refers to "panning [a] light up, down, side to side looking for various animals," in connection with night hunting.

Count III:     Hunting Hours, a petty misdemeanor, in

               violation of HAR § 13-123-6; and

Count IV:     Artificial Light Prohibited, a petty

               misdemeanor, in violation of HAR § 13-123-7.[5]

## A.   Circuit Court Proceedings

Medeiros entered an initial plea of not guilty as to all four counts.  He subsequently filed a motion to suppress "all evidence obtained by law enforcement officers of the state [DLNR] arising out of an investigative detention of [Medeiros] on Piʻilani Highway on Feb[ruary] 24, 2017[,]" including all statements made by Medeiros and all physical evidence seized from his truck.  The circuit court[6] held a hearing on the matter, at which Officers Yamamoto and Chamberlain testified.[7]

### 1.   Suppression Hearing

Officer Yamamoto testified that at around 9:00 pm on February 24, 2017, he and Officer Chamberlain were patrolling an area between Kaupō and ʻUlupalakua for hunting and fishing violations.  Officer Yamamoto testified that he and Officer

---

[5]     HAR § 13-123-6 provides: "Hunting is permitted from one-half hour before sunrise to one-half hour after sunset.  No person shall hunt from one-half hour after sunset to one-half hour before sunrise except where specified differently."

HAR § 13-123-7 provides: "No person shall hunt game mammals with the use of artificial light, except as optical sighting devices during authorized hunting hours."

[6]     The Honorable Rhonda I.L. Loo presided.

[7]     Officer Chamberlain corroborated Officer Yamamoto's testimony. Because Officer Chamberlain's testimony is duplicative, we do not include it in this opinion.

Chamberlain stopped at an elevated vantage point with a clear, unobstructed view of the area.  Officer Yamamoto observed a gray Toyota pickup truck pass by and "[u]pon the Toyota coming up on the other horizon across [] the valley, . . . [he] started seeing panning of a light."

Officer Yamamoto testified that the light was coming from the driver's side of the vehicle, which was slowly moving down Pi'ilani Highway, "heading towards Kaupo/Hana."  Officer Yamamoto explained that spotlighting is a "common act of a hunter [engaged in] night hunting.  They tend to look for animals on the side of the road."  He further explained that the truck's slow maneuvering was "an act that's consistent [with what] a night hunter would do."  Because spotlighting is "pretty common with night hunting in that area," Officer Yamamoto suspected that there "could be possibly night hunting going on[.]"

Officer Yamamoto testified that after observing the truck for about two minutes, he and Officer Chamberlain got into separate vehicles and headed toward it.  Officer Yamamoto admitted that he lost sight of the truck for about fifteen minutes, until he noticed a gray Toyota pickup truck traveling in the opposite direction.  The truck turned left in front of Officer Yamamoto, onto the shoulder.  Although Officer Yamamoto could not say for sure that the truck on the shoulder was the same vehicle that he observed from the vantage point, it had the same general appearance, and Officer Yamamoto had only observed

6

one other vehicle - a smaller sedan - on the road that night.  As a result, Officer Yamamoto also pulled onto the shoulder.

Officer Yamamoto stated that when he exited his vehicle, the driver of the truck was walking towards him, wearing a camouflage t-shirt.  He identified the driver as Kaohulani Medeiros.  Officer Yamamoto testified that he told Medeiros, "the reason why we're here . . . I won't lie to you.  What we observed earlier was a light panning from this vehicle."  Medeiros responded, "I'm not going to lie to you either.  I was spotlighting."

Officer Yamamoto further testified that when he asked Medeiros if he had any weapons, Medeiros recovered a rifle and a case of bullets from the cab of his truck and stated that the magazine for the weapon "was in the cup holder between the driver's seat and the passenger seat."  Officer Yamamoto testified that the magazine contained ammunition, but there were no bullets in the rifle's chamber.  Officer Yamamoto further testified that he recovered a headlamp "that was given to him as what was being shined."

According to Officer Yamamoto, Medeiros stated that he borrowed the rifle from his brother and was planning to go hunting the next morning.  Medeiros also stated that he was driving home from work when he pulled over to urinate, and further explained that he worked in Wailuku and lived in Hāna.  However, Officer Yamamoto testified that Medeiros's truck was

7

actually headed toward Wailuku, rather than Hāna, just before it pulled onto the shoulder.  Officer Yamamoto issued Medeiros two criminal citations for "night illumination for hunting . . . and for night hunting."

The circuit court entered findings of fact, conclusions of law, and an order denying Medeiros's motion to suppress.  The circuit court's findings of fact essentially restated the testimony of Officers Yamamoto and Chamberlain.

**2.    Plea Agreement and Motion for a DANC Plea**

Medeiros entered into a plea agreement whereby the State would dismiss Counts I and II if Medeiros pleaded guilty or no contest to Counts III and IV.  The plea agreement further provided that Medeiros would be sentenced to a $100 fine for each count.  Medeiros filed a motion for a DANC plea, expressing his intent to plead no contest to both petty misdemeanor charges, and requesting that the circuit court defer acceptance of his no contest pleas, pursuant to HRS Chapter 853.[8]  Medeiros attached

---

[8]    HRS § 853-1(a) (2014) provides that, upon a proper motion,

    (1)    When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor;

    (2)    It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and

    (3)    The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law,

the court, without accepting the plea of nolo contendere or entering a judgment of guilt and with

(continued...)

8

letters written by his father and brother as exhibits to his motion for a DANC plea.  The letters explained that the rifle seized from Medeiros's truck was registered to Medeiros's father, and that both Medeiros and his brother had permission to use and transport it.

At a hearing on Medeiros's change of plea and sentencing, the circuit court found that Medeiros "voluntarily enter[ed] pleas of no contest with an understanding of the nature of the charges against him and the consequences of his plea." Defense counsel then requested that the circuit court grant Medeiros's motion for a DANC plea, in consideration of the factors set forth by HRS § 853-1(a), because: 1) Medeiros voluntarily pled no contest to both petty misdemeanor charges; 2) Medeiros's history showed that he would not likely engage in a future criminal course of conduct; and 3) the administration of justice did not require that Medeiros suffer any penalty, other than the fines set forth by the plea agreement and the conditions imposed for the duration of a DANC plea probationary period. Accordingly, defense counsel requested that the circuit court sentence Medeiros to a $100 fine for each count, pursuant to the plea agreement, and "continue the deferral pending the final outcome or payment of the $200.00 fine.  In other words, if

_____

[8](...continued)
the consent of the defendant and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.

[Medeiros] pays $200.00 in one month, then the [DANC plea] probationary period ends."

Medeiros then addressed the court and stated, "[s]orry for the mess that I got myself into.  And you're not going to see me in here again.  I can guarantee that.  This was just one big misunderstanding.  And I['m] sorry."

The prosecutor deferred to the circuit court with regard to Medeiros's motion for a DANC plea, stating:

> Medeiros was honest with the DLNR officers that night.
> Um, he was honest.  Maybe he didn't quite know the
> law.
>
> . . . .
>
> [H]e's young.  He's 23 years old.  He's never been in
> trouble before.  This is – he's never been arrested
> before.  I think that this is a huge learning
> experience for him. . . .  I don't think that we'll
> see him in this courtroom again.
>
> He definitely has support from his family.  I think
> his parents have been here with him every time in
> court.
>
> Mr. Medeiros, Sr. wrote a letter explaining the
> situation. . . .  [P]erhaps this was a
> misunderstanding in that the Medeiros family doesn't
> quite know the law and understand the law.  I think by
> this point they do.
>
> And . . . so I'm comfortable that this was a learning
> experience for Mr. Medeiros.  I don't think that he
> will be back in court again.
>
> And so with regards to the request for a deferral,
> I'll defer to the Court on that. . . .  [T]he State is
> requesting, as pursuant to a plea agreement, the
> minimum fine, which is $100.00 on each of the petty
> misdemeanor counts.

The circuit court found that Medeiros was "likely again

to engage in such a criminal course of conduct," and accordingly, denied Medeiros's motion for a DANC plea. The circuit court explained its ruling as follows:

> [A]ll I have before me is basically the arguments of counsel and the evidence that the Court heard at the motion to suppress.[9]
>
> . . . .
>
> As far as the request for deferral under [HRS §] 853-1[,] the Court has to consider whether a defendant voluntarily pleads no contest, which he has today, prior to the trial, whether it appears to the Court the defendant is not likely to again engage in the criminal course of conduct, and [whether] the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law.
>
> And the Court is concerned about the defendant's . . . half truths, admitting that he was spotlighting, [while at] the same time saying that he was [going] home to Hana from work, when he was going in the opposite direction.
>
> The Court's also concerned about the camouflage wear, the . . . location where this took place[,] which is known for night hunting. That it occurred at night, 8:30 to 9:00 [], which is definitely within the time period for hunting hours.
>
> And that the artificial light . . . was recovered along with ammunition, [the] magazine in the cupholder, as well as [the fact that Medeiros was] wearing [] camo[uflage] . . ., and the weapon [] found in the vehicle.

---

[9]     Medeiros and the State had executed a stipulation and order waiving the preparation of a presentence investigation (PSI) report. At the hearing on Medeiros's change of plea and sentencing, the circuit court explained to Medeiros that the PSI report would be "pretty thorough and [would give the court] a very good picture of [his] background and the kind of person [he is], and what [his] history is." After conducting an extensive colloquy with Medeiros, the circuit court found that Medeiros "knowingly, intelligently and voluntarily waiv[ed] his right to have a [PSI report] prepared." Accordingly, it entered the stipulation and order.

11

> The Court finds the defendant is likely again to
> engage in such a criminal course of conduct.  I'm
> going to deny [the] request for deferred acceptance of
> no contest plea.

### 3.    Judgment, Conviction, and Probation Sentence

The circuit court convicted Medeiros of Count III, Hunting Hours, and Count IV, Artificial Light Prohibited - both petty misdemeanor offenses.  HAR §§ 13-123-6, 13-123-7, 13-123-13; HRS § 183D-5(a) (Supp. 2018).[10]  The circuit court imposed a fine of $100 for each count, for a total of $200.  It also sentenced Medeiros to two six-month terms of probation, one for each count, to run concurrently.[11]

Pursuant to a motion by the State, which was filed in accordance with the plea agreement, the circuit court dismissed with prejudice Counts I and II, the felony and misdemeanor charges.

### B.    Appeal to the ICA

Medeiros appealed to the ICA, arguing that the circuit court abused its discretion in denying his motion for a DANC plea.  In response, the State argued that Medeiros was ineligible

---

[10]    See supra note 5.

HAR § 13-123-13 provides: "Any person violating any of the provisions of this chapter shall be subject to criminal and or administrative penalties as provided in [HRS §§] 183D-5, 171-6.4, or 171-31.6."

HRS § 183D-5(a) provides, in part, "Any person violating . . . any rule adopted under this chapter shall be guilty of a petty misdemeanor [.]"

[11]    The circuit court did not enter written findings of fact or conclusions of law with regard to its denial of Medeiros's motion for a DANC plea.

for a DANC plea under HRS § 853-4(a)(5) because the offenses to which he pled no contest were nonprobationable. (Citing Hamili, 87 Hawai'i 102, 952 P.2d 390.) The State further argued that the circuit court did not abuse its discretion in denying Medeiros's motion for a DANC plea.

The ICA did not address the State's argument regarding Medeiros's eligibility for a DANC plea or probation. With regard to the circuit court's denial of Medeiros's motion for a DANC plea, the ICA determined that, "based on the record in this case, as well as the information and argument before the [c]ircuit [c]ourt, it did not appear to the [circuit] court that it was unlikely that Medeiros would again engage in a criminal course of conduct." Although the ICA acknowledged that "there [was] scant support in the record for or against this determination," it concluded that Medeiros had failed to show that the circuit court's denial of his motion for a DANC plea constituted an abuse of discretion. Thus, the ICA affirmed the circuit court's Judgment, Conviction, and Probation Sentence.

## II. STANDARDS OF REVIEW

### A. Statutory Interpretation

"The interpretation of a statute is a question of law reviewable de novo." Gray v. Admin. Dir. of the Court, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (citing State v. Arceo, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)). Our statutory construction is guided by the following well-

13

established rules:

> When construing a statute, our foremost obligation is
> to ascertain and give effect to the intention of the
> legislature, which is to be obtained primarily from
> the language contained in the statute itself.  And we
> must read statutory language in the context of the
> entire statute and construe it in a manner consistent
> with its purpose.
>
> When there is doubt, doubleness of meaning, or
> indistinctiveness or uncertainty of an expression used
> in a statute, an ambiguity exists.
>
> In construing an ambiguous statute, "the meaning of
> the ambiguous words may be sought by examining the
> context, with which the ambiguous words, phrases, and
> sentences may be compared, in order to ascertain their
> true meaning."  HRS § 1-15(1) (1993).  Moreover, the
> courts  may resort to extrinsic aids in determining
> legislative intent.  One avenue is the use of
> legislative history as an interpretive tool.  Gray, 84
> Hawai'i at 148, 931 P.2d at 590 (footnote omitted).
> [The appellate] court may also consider "the reason
> and spirit of the law, and the cause which induced the
> legislature to enact it to discover its true meaning."
> HRS § 1-12(2).  "Laws in pari materia, or upon the
> same subject matter, shall be construed with reference
> to each other.  What is clear in one statute may be
> called upon in aid to explain what is doubtful in
> another."  HRS § 1-16 (1993).

State v. Koch, 107 Hawai'i 215, 220, 112 P.3d 69, 74 (2005).

## B.   Motion for a DANC Plea

> The grant or denial of a motion for a DANC plea is
> within the discretion of the [trial] court and will
> not be disturbed unless there has been manifest abuse
> of discretion.  State v. Tom, 69 Haw. 602, 603, 752
> P.2d 597, 597 (1988).  "An abuse of discretion occurs
> if the trial court has clearly exceeded the bounds of
> reason or has disregarded rules or principles of law
> or practice to the substantial detriment of a party
> litigant."  State v. Davia, 87 Hawai'i 249, 253, 953
> P.2d 1347, 1351 (1998) (internal quotation marks and
> citation omitted).

State v. Klie, 116 Hawai'i 519, 521-22, 174 P.3d 358, 360-61

(2007).

### III.  DISCUSSION

Medeiros argues that the circuit court abused its discretion by denying his motion for a DANC plea based on its finding that he was likely again to engage in a criminal course of conduct.  We agree.

### A.    Medeiros Was Eligible for a DANC Plea

As a threshold matter, we address the State's contention that Medeiros was ineligible for a DANC plea because probation was not an authorized sentence for the offenses to which he pled no contest.

We begin our analysis with a historical overview.  In 1972, the legislature undertook a "complete reorganization" of the State's criminal laws, which was aimed at, <u>inter alia</u>, eliminating inconsistencies.  Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1035.  This objective was advanced, in part, through the enactment of Chapter 706, which largely standardized sentencing.  1972 Haw. Sess. Laws Act 9, § 1 at 70-85.  Pursuant to HRS § 706-600 (2014), "[n]o sentence shall be imposed otherwise than in accordance with [HRS] chapter [706]."  The commentary on HRS § 706-600 states, in part:

> This section establishes that <u>dispositions for all offenses - whether defined within or outside of the Penal Code - are to be imposed in accordance with this chapter</u> and that, except for the power of the court to impose "incidental civil sanctions[,"] . . . as provided in § 706-605(4), "the only dispositions authorized are those permitted by the Code."

15

> The Penal Code, in centralizing provisions relating to the disposition of convicted defendants in one chapter, differs from previous law which provided a separate sanction (fine or imprisonment or both) for each offense.
>
> . . . .
>
> By centralizing sentencing the Code seeks to achieve an internal consistency which is lacking under previous law.

(Emphases added).

Four years after the legislature reorganized the criminal laws by enacting Chapter 706, in 1976, the legislature enacted Chapter 853, which allows for DAG pleas. 1976 Haw. Sess. Law Act 154, § 1 at 279. And in 1983, the legislature added DANC pleas to Chapter 853. 1983 Haw. Sess. Laws Act 290, § 1 at 617. The statute provides the same process for entering both DAG and DANC pleas, and the same criteria apply to both. HRS § 853-1(a)(1).

The deferral period associated with a DANC or DAG plea is closely analogous to a probationary period. State v. Kaufman, 92 Hawai'i 322, 328, 991 P.2d 832, 838 (2000) ("Upon review of the legislative and judicial history of DAG plea procedures, it is clear that the DAG plea deferral period is closely analogous to a 'probationary period.'"); HRS § 853-1 (allowing for the deferred acceptance of guilty pleas and no contest pleas without distinguishing between the two). It is therefore unsurprising that, pursuant to HRS § 853-4(a)(5), HRS § 706-620 and Chapter 853 operate together to provide that defendants are ineligible to

benefit from Chapter 853 where the underlying offense is nonprobationable.

HRS § 706-620 provides that "[a] defendant who has been convicted of a crime may be sentenced to a term of probation."  A defendant in a criminal case is eligible to be sentenced to probation under this section unless one of the six exceptions provided therein applies, or a clear indication of legislative intent to bar the application of HRS § 706-620 exists.  The six excluded categories of crimes are as follows:

> (1)   The crime is first or second degree murder or attempted first or second degree murder;
>
> (2)   The crime is a class A felony, except class A felonies defined in chapter 712, part IV, and by section 707-702;
>
> (3)   The defendant is a repeat offender under section 706-606.5;
>
> (4)   The defendant is a felony firearm offender as defined in section 706-660.1(2);
>
> (5)   The crime involved the death of or the infliction of serious or substantial bodily injury upon a child, an elder person, or a handicapped person under section 706-660.2; or
>
> (6)   The crime is cruelty to animals where ten or more pet animals were involved under section 711-1108.5 or 711-1109.

HRS § 706-620.

Furthermore, HRS § 706-605 (2014) specifically authorizes a court, in its discretion, to sentence a person convicted of a petty misdemeanor to a suspended sentence or a term of probation.  HRS §§ 706-605(1), (3).

In <u>Hamili</u>, this court determined that Prohibited Fishing with Gill Nets was a nonprobationable offense, pursuant to this court's interpretation of the applicable sentencing provision, HRS § 188-70(a) (1993). 87 Hawai'i at 107, 952 P.2d at 395. The provision provided:

> Any person violating any provision of this chapter . . . or any rule adopted pursuant thereto is guilty of a petty misdemeanor and upon conviction thereof <u>shall</u> be punished as follows:
>
> (1)  For a first conviction, by a fine of not more than $500, or by imprisonment of not more than thirty days, or both [.]

HRS § 188-70(a) (1993) (emphasis added).

This court determined that the use of the word "shall" indicated that the three sentencing alternatives set forth by the statute constituted a mandatory sentencing provision. <u>Hamili</u>, 87 Hawai'i at 107, 952 P.2d at 395. Therefore, this court concluded that "a DANC plea [was] unavailable for persons convicted of violating the gill net fishing statute." <u>Id.</u> This court explained:

> <u>Because the sentencing court is limited to the alternatives expressly enumerated in HRS § 188-70, and probation is not an enumerated alternative, the offense for which the sentence is imposed is nonprobationable</u>. Thus, HRS § 853-4(5), which provides that the DANC plea is not applicable where the offense charged is nonprobationable, prohibits the allowance of a DANC plea.

<u>Id.</u> (emphasis added).

Like the sentencing provision in <u>Hamili</u>, the sentencing provision in the instant case, HRS § 183D-5, utilizes the word

18

"shall" and sets forth three sentencing alternatives.[12] Thus, it appears that <u>Hamili</u> is dispositive of the inquiry at hand. However, as discussed below, we conclude that <u>Hamili</u> was wrongly decided and we hereby overrule it.

This court's analysis in <u>Hamili</u> relied heavily on <u>State v. Dannenberg</u>, 74 Haw. 75, 837 P.2d 776 (1992), and <u>State v. Mun Chung Tom</u>, 69 Haw. 602, 752 P.2d 597 (1988). However, the <u>Hamili</u> court did not address the applicability of HRS § 706-620, and in light of the legislature's clear intent in enacting HRS Chapter 706, we find that the <u>Hamili</u> court's reliance upon these cases was misplaced. The sentencing provision in <u>Hamili</u> is distinguishable from those at issue in <u>Dannenberg</u> and <u>Tom</u> because it lacks a clear indication of legislative intent to bar application of HRS § 706-620.

In <u>Dannenberg</u>, this court held that trial courts lack power to grant motions for a DANC plea in prostitution cases. 74 Haw. at 80, 837 P.2d at 779. The sentencing provision at issue stated, in pertinent part:

> <u>Notwithstanding any other law to the contrary</u>, a person convicted of committing the offense of prostitution <u>shall be sentenced as follows</u>:

---

[12]     HRS § 183D-5(a) provides, in pertinent part:

Any person violating . . . any rule adopted under this chapter shall be guilty of a petty misdemeanor, and upon conviction thereof, shall be punished as follows:

(1)     For a first conviction, by a mandatory fine of not less than $100, or imprisonment of not more than thirty days, or both[.]

>       (a)   For the first offense, a fine of $500 and the
>             person may be sentenced to a term of
>             imprisonment of not more than thirty days;
>
>       . . . .
>
>       (b)   For any subsequent offense, a fine of $500 and a
>             term of imprisonment of thirty days, <u>without
>             possibility of suspension of sentence or
>             probation</u>.

HRS § 712-1200 (Supp. 1991) (emphases added).

This court noted that the legislative history of the provision revealed clear legislative intent "to limit the discretion of the trial court in sentencing prostitution offenses and to provide a mandatory sentencing structure unlike that for other petty misdemeanors." <u>Dannenberg</u>, 74 Haw. at 81, 837 P.2d at 779 (citing Sen. Conf. Comm. Rep. No. 15, 1981 Senate Journal, at 907). In light of this indication of clear legislative intent to exclude prostitution from the reach of general sentencing provisions, this court "construe[d] 'notwithstanding any other law to the contrary' in HRS § 712-1200 to bar the acceptance of DANC and DAG pleas." <u>Id.</u> at 83, 837 P.2d at 780. This court explained, "[w]e do so because we believe that the legislature did not intend the trial courts to have discretionary authority to avoid the sentencing structure the legislature has imposed upon prostitution law offenders." <u>Id.</u>

Similarly, in <u>Tom</u>, this court held that it was beyond the trial court's discretion to grant a DANC plea in driving under the influence cases because the underlying offense was nonprobationable. 69 Haw. at 603, 752 P.2d at 598. The

20

sentencing provision at issue stated, "[a] person committing the offense of driving under the influence of intoxicating liquor shall be sentenced as follows without possibility of probation or suspension of sentence." HRS § 291-4 (1985 & Supp. 1987). This court determined that this language was "sufficiently clear in mandating the sentence to be imposed," and thus affirmed the trial court's denial of the defendant's motion for a DANC plea. Tom, 69 Haw. at 603, 752 P.2d at 598.

In contrast, the plain language of the sentencing statute in Hamili was ambiguous with regard to the possibility of probation or suspension of sentence, and as to the application of general sentencing provisions. As such, Hamili is distinguishable from Dannenberg and Tom. As set forth above, through the enactment of HRS § 706-605, the legislature made clear that a sentencing court is authorized to grant a DANC plea or to impose a period of probation where the underlying offense is a petty misdemeanor. HRS §§ 706-605(1)(a), (3) ("In addition to any disposition authorized in subsection (1)[, including probation], the court may sentence a person convicted of a . . . petty misdemeanor to a suspended sentence."). Furthermore, HRS § 706-600 and the commentary thereto indicate clear legislative intent to "centraliz[e] sentencing." HRS § 706-600 ("[n]o sentence shall be imposed otherwise than in accordance with [HRS] chapter [706]). The Hamili court failed to analyze these statutory pronouncements in reaching its determination. Upon

21

further consideration, we hold that a clear indication of contrary legislative intent must be present to exclude an offense from the scope of HRS § 706-620, and that the use of the word "shall" in the context of requiring a selection from alternative sentences is insufficient to meet this standard. We therefore overrule Hamili.

Because here, as in Hamili, there is no clear indication of legislative intent to exclude the petty misdemeanor offenses of Night Hunting and Artificial Light Prohibited from the scope of HRS § 706-620, the offenses are probationable. There is no suggestion that Medeiros was otherwise ineligible for a DANC plea under HRS § 853-4.[13] We therefore conclude that Medeiros was eligible for a DANC plea.

## B. The Circuit Court Abused its Discretion by Denying Medeiros's Motion for a DANC Plea

Where a defendant is eligible for a DANC or DAG plea, the court may, in its discretion, defer acceptance of the defendant's plea and impose conditions of deferment, provided that:

> (1)    [The] defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor;
>
> (2)    It appears to the court that the defendant is not likely again to engage in a criminal course

---

[13] HRS § 853-4(a) sets forth the circumstances under which a defendant is ineligible to benefit from HRS Chapter 853. These include specifically enumerated offenses and categories of offenses for which DANC and DAG pleas are unavailable, as well as conditions pertaining to the manner in which the charged offense was committed, and to the defendant's criminal history, that preclude application of HRS Chapter 853.

22

of conduct; and

(3)     The ends of justice and the welfare of society
        do not require that the defendant shall
        presently suffer the penalty imposed by law.

HRS § 853-1(a).

However, the grant or denial of a motion for a DANC plea may be set aside on appeal where there has been manifest abuse of discretion.  Klie, 116 Hawaiʻi at 521-22, 174 P.3d at 360-61.

As discussed above, Medeiros was eligible for a DANC plea.  The circuit court acknowledged that Medeiros voluntarily pleaded nolo contendere to the underlying petty misdemeanor offenses prior to the commencement of trial.  However, the circuit court denied Medeiros's motion for a DANC plea based on its finding that Medeiros was likely to again engage in a criminal course of conduct.

Medeiros did not testify at the suppression hearing and no presentence investigation report was prepared.[14]  Thus, the only information before the circuit court at the time of its ruling on Medeiros's motion for a DANC plea was: the testimony of Officers Yamamoto and Chamberlain elicited at the suppression hearing; Medeiros's motion for a DANC plea and the attached letters from his father and brother; the arguments of counsel; and Medeiros's statement, "[s]orry for the mess that I got myself into.  And you're not going to see me in here again.  I can

---

[14]     See supra note 8.

guarantee that. This was just one big misunderstanding. And I['m] sorry."

The circuit court explained its finding that Medeiros was likely to again engage in a criminal course of conduct as follows:

> [T]he Court is concerned about the defendant's . . . half truths, admitting that he was spotlighting, [while at] the same time saying that he was [going] home to Hana from work, when he was going in the opposite direction.
>
> The Court's also concerned about the camouflage wear, the . . . location where this took place[,] which is known for night hunting. That it occurred at night, 8:30 to 9:00 [], which is definitely within the time period for hunting hours [prohibited].
>
> And that the artificial light . . . was recovered along with ammunition, [the] magazine in the cupholder, as well as [the fact that Medeiros was] wearing [] camo[uflage] . . ., and the weapon [] found in the vehicle.

As such, it appears that the circuit court based its ruling on: 1) concerns regarding the manner in which Medeiros committed the underlying offenses; and 2) the fact that one of the statements that Medeiros made to the DLNR officers at the time he was apprehended appeared to be inconsistent with such evidence. These were not sufficient grounds for the denial of Medeiros's motion for a DANC plea.

First, the circuit court expressed concern regarding certain aspects of Medeiros's conduct at the time he was apprehended by the DLNR officers, including the location where the offenses took place, Medeiros's camouflage t-shirt, and the

equipment that was seized from his vehicle. Although not explicitly stated, it appears that the circuit court drew an inference of sophistication from the way in which Medeiros committed the underlying offenses, and thus found an apparent likelihood that Medeiros would again engage in a criminal course of conduct. Even assuming that the circumstances of a defendant's commission of the underlying offense could, in some instances, indicate a heightened likelihood of re-offending, we do not see how the facts cited by the circuit court here give rise to an inference that Medeiros was more likely to re-offend than any other DANC plea-eligible defendant charged with the same underlying offenses.

Second, Medeiros's statement to the DLNR officer that he was going home to Hana at the time he was apprehended does not constitute evidence that he is likely to again engage in a criminal course of conduct simply because the statement may seem implausible or inconsistent. In addition, as recognized by the State, "Medeiros was honest with the DLNR officers" when he admitted that he had been spotlighting.

In sum, there was a lack of evidence before the circuit court to support its conclusion that Medeiros was likely to again engage in a criminal course of conduct. Moreover, Medeiros was a youthful, first-time offender and the only statement that he made to the circuit court consisted of an apology, acknowledgment of the "mess that [he] got [himself] into," and a "guarantee" that

25

he would not re-offend.  Thus, in light of the entire record before the circuit court, its denial of Medeiros's motion for a DANC plea constituted an abuse of discretion.

## IV.  CONCLUSION

As discussed herein, the circuit court erred in denying Medeiros's motion for a DANC plea.  We therefore vacate the ICA's February 28, 2019 Judgment on Appeal and the circuit court's October 12, 2017 Judgment, Conviction, and Probation Sentence.  This case is remanded to the circuit court for proceedings consistent with this opinion.

Hayden Aluli
for petitioner

Peter A. Hanano
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

