**Electronically Filed
Supreme Court
SCWC-20-0000067
07-FEB-2022
09:50 AM
Dkt. 21 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

VICTORIA I. SATOAFAIGA,
Petitioner/Defendant-Appellant.

SCWC-20-0000067

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-20-0000067; 2CPC-17-0000969)

FEBRUARY 7, 2022

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I. INTRODUCTION

Victoria I. Satoafaiga, a former employee of the Central Maui Boys & Girls Club (the Club), was indicted for the sexual assault of a twelve-year-old member of the organization (complaining witness or CW). Initially charged with four counts, including Sexual Assault in the First Degree for the

"sexual penetration" of the CW, she accepted a plea agreement allowing her to plead no contest to an amended charge of Sexual Assault in the Fourth Degree and one count of Custodial Interference in the Second Degree. Satoafaiga moved for a deferred acceptance of no contest (DANC) plea. The circuit court denied the DANC motion and sentenced her to a one-year prison sentence. She appealed the denial of her DANC motion, and the Intermediate Court of Appeals (ICA) affirmed. Satoafaiga now asks us to reverse the ICA and the circuit court's decisions and remand to the circuit court with instructions to enter an order granting the DANC motion <u>nunc pro tunc</u> to the date of her sentencing.

Satoafaiga's appeal requires us to decide whether it was proper for the circuit court to take into account an alleged act of "sexual penetration" when the only sexual-assault charge she pleaded to by definition excluded acts of sexual penetration. We hold that the circuit court's consideration of sexual penetration under these circumstances constituted an abuse of discretion. Satoafaiga pleaded no contest to Sexual Assault in the Fourth Degree, which criminalizes "sexual contact." Hawaiʻi Revised Statutes (HRS) § 707-733(1)(a) (Supp. 2016). "Sexual contact" is defined as "any touching, <u>other than acts of 'sexual penetration'</u>, of the

sexual or other intimate parts of another."  HRS § 707-700 (Supp. 2016) (emphasis added).  Thus, Satoafaiga's no contest plea to Sexual Assault in the Fourth Degree excluded any allegation of sexual penetration.  Under these circumstances, the circuit court abused its discretion when it improperly considered an allegation of sexual penetration in denying her DANC motion.  We therefore vacate the ICA's judgment on appeal to the extent it affirmed the denial of the DANC motion and vacate the circuit court's judgment of conviction inasmuch as it denied the motion for a DANC.[1]  We remand for reconsideration of Satoafaiga's DANC motion consistent with this opinion.

As to Satoafaiga's remaining arguments, we affirm the judgments of the ICA and the circuit court.  The circuit court did not otherwise exceed the bounds of reason or abuse its discretion in ruling on her motion.

---

[1]     Satoafaiga has never challenged the trial court's sentencing decision.  Therefore, even though we remand to reconsider the DANC decision, we leave the sentence undisturbed.

## II.  BACKGROUND

### A.  Factual Background[2]

Satoafaiga was employed as a director of the Boys and Girls Club of Central Maui between August 2016 and April 2017. The CW was a twelve-year-old living with her Aunt and Uncle, who had raised her since she was three years old. She was a member of the Club, part of a network of clubhouses that provides recreational opportunities and a safe haven for children of different ages.

Aunt and Uncle were first alerted to an inappropriate relationship between Satoafaiga and the CW when they discovered explicit text messages on the CW's phone. Near midnight on April 16, 2017, Uncle noticed that the CW was not asleep and appeared to be hiding under her covers. He asked her to hand over her phone. Uncle saw a text message exchange with an unknown person saved as "V.$(Mom)," who sent the CW explicit sexual messages and stated in one message, "I love you baby." The person had also sent the CW explicit images. Uncle asked

---

[2]     The facts recounted here are drawn from the presentence investigation (PSI) report prepared for the circuit court and the findings of fact issued by the circuit court following a motion to suppress cell-phone evidence.

who the person was and the CW told him it was Satoafaiga.[3] Uncle was familiar with Satoafaiga as he had met her at the Club.

Three days later, the CW was interviewed at the Children's Justice Center in Wailuku.  The CW related that she had gotten to know Satoafaiga after Satoafaiga expressed concern about the CW and told her to reach out if she needed. Their relationship progressed from there.[4]

The CW described two incidents of sexual assault. First, some months before the CW was interviewed, Satoafaiga asked the CW to help her retrieve some snacks upstairs at the Club; while there, she grabbed the CW by the hips and then kissed her on the lips, over her protest.  Some time later, over spring break in 2017, the CW claimed that, while the two of them were alone together in an upstairs area at the Club,

---

[3]     Warrants were later executed for records from the CW's phone as well as Satoafaiga's personal cell phone and a cell phone issued to her by the Club, which confirmed that the exchange was in fact with Satoafaiga.

[4]     Satoafaiga described her relationship with the CW in a letter to the court.  She recalled expressing concerns to the CW about her wellbeing and encouraging her to reach out if she needed.  She claimed that the CW "would, from that day forward, hang out in my office and often asked questions about my personal life."  According to Satoafaiga, "over several weeks . . . [the CW] was becoming somewhat obsessive with hanging out around me."
    She also acknowledged the text messages she exchanged with the CW: "I did develop what later came to be a[n] inappropriate friendship with [the CW] and I understand that it was wrong.  Inappropriate text messages were sent and and [sic] received and I am truly ashamed and embarrassed of my inappropriate conduct."

Satoafaiga digitally penetrated her under her clothing. The CW pushed her off and left the Club.[5] Police later learned from Uncle that Satoafaiga gave the CW a sweater and two pairs of loop earrings as gifts. Satoafaiga resigned from the Club on April 27, 2017.

Pursuant to several search warrants, the Maui Police Department (MPD) obtained phone records from the CW and Satoafaiga's phones.[6] The warrants revealed that Satoafaiga exchanged approximately 15,978 text messages with the CW over a roughly four-month period culminating in April 2017. Some of these text messages were sexually explicit.

Months later, on October 27, 2017, Aunt and Uncle contacted the MPD to report that the CW had run away. Uncle had gone to the Club to pick up the CW but was not able to locate her. The CW later told Aunt and Uncle that she had been with Satoafaiga and not at the Club during the daytime on October 27. Satoafaiga took her to the Kahului Break Water

---

[5] Satoafaiga maintained throughout these proceedings that she did not sexually assault the CW. In a letter to the circuit court she expressed remorse for developing an inappropriate relationship with the CW but asserted that she was "not a rapist or a pedophile" and that she accepted the plea offer to avoid the risk of conviction for the first-degree offense. And in her ICA reply brief, she asserted that through this statement, she had "categorically denied 'digital penetration.'"

[6] Satoafaiga moved to suppress the results of the search warrants on her work and personal phones, including the text messages. The circuit court denied this motion.

where she made several hickeys on the CW's chest.  When the CW returned to the Club, she noticed Uncle waiting for her and ran away so she would not get in trouble.  Finally, at about 4 a.m. the following morning, Satoafaiga's partner called Aunt to tell her the CW was at their residence.  Aunt contacted the MPD, and the MPD escorted her to the residence.

Satoafaiga's account of that evening differed from Aunt and Uncle's.  Satoafaiga and her partner claimed they had gone out for a "Ladies Night" around 9 p.m. on October 27. When they came home at about 2 a.m., they discovered the CW there; after questioning her about how she knew their address, they got Aunt's number from the CW and called her.

## B. Procedural History

### 1.  Circuit court proceedings[7]

A grand jury indicted Satoafaiga on four counts. Count One alleged that Satoafaiga committed Sexual Assault in the Third Degree by kissing the CW on the lips, in violation of HRS § 707-732(1)(b) (2014).[8]  Count Two alleged that she committed Sexual Assault in the First Degree by inserting her

---

[7]    The Honorable Rhonda I.L. Loo presided.

[8]    HRS § 707-732(1)(b) states, "A person commits the offense of sexual assault in the third degree if: . . . The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]"

finger into the CW's vagina, in violation of HRS § 707-730(1)(b) (2014).[9] Count Three alleged that she committed Attempted Sexual Assault in the Third Degree on October 27, 2017, presumably a reference to the Kahului Break Water incident, in violation of HRS §§ 705-500 (2014) and 707-732(1)(b).[10] And Count Four alleged that she committed Custodial Interference in the Second Degree on the same date, in violation of HRS § 707-727(1)(a) (2014).[11] The circuit court later dismissed Count Three for failing to provide Satoafaiga with adequate notice.

The prosecutor offered Satoafaiga a plea agreement. The prosecution offered to dismiss Count One with prejudice and to amend Count Two to a charge of Sexual Assault in the Fourth

---

[9] HRS § 707-730(1)(b) states, "A person commits the offense of sexual assault in the first degree if: . . . The person knowingly engages in sexual penetration with another person who is less than fourteen years old[.]"

[10] HRS § 705-500(1)(b) states, in relevant part: "A person is guilty of an attempt to commit a crime if the person: . . . Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime."

[11] HRS § 707-727(1)(a) states, "A person commits the offense of custodial interference in the second degree if: (a) The person intentionally or knowingly takes, entices, conceals, or detains a minor knowing that the person has no right to do so[.]"

Degree under HRS 707-733(1)(a) (Supp. 2016).[12]  Count Four

remained unchanged.  Satoafaiga accepted the plea deal,

agreeing to enter a plea of either guilty or no contest to

Count Four and the amended Count Two and stipulating to a

factual basis to support those charges.  In conjunction with

her plea agreement, Satoafaiga moved to defer the acceptance of

her no contest plea.

The circuit court allowed her to withdraw her plea of

not guilty and enter a plea of no contest.  The court ordered a

presentence investigation (PSI) report to be prepared.

The court convened on January 22, 2020 to consider

the DANC motion and sentencing.  Satoafaiga urged the court to

find that the three prongs of the HRS § 853-1 (2014) analysis,

governing DANC and deferred acceptance of guilty (DAG) plea

motions, were met: (1) she voluntarily pleaded guilty or no

contest before trial, (2) she was not likely to engage again in

a criminal course of conduct, and (3) the ends of justice and

the welfare of society did not require that she presently

---

[12]    HRS § 707-733(1)(a) states, "A person commits the offense of sexual assault in the fourth degree if: (a) The person knowingly subjects another person, not married to the actor, to sexual contact by compulsion or causes another person, not married to the actor, to have sexual contact with the actor by compulsion[.]"

suffer the penalty imposed by law.[13]  First, she pointed to "the excellent presentence report and the character references" from friends, family, and coworkers that it included.  She argued that her relative youth – she was in her late twenties at the time – and the fact that she had no arrest record weighed toward deferral.  Satoafaiga referenced the "Assessment Factors for Sentencing" in the PSI report, which found that she had previously led a "law-abiding life" and that her "character and attitude and history" indicated that she was "unlikely to commit another crime."  She next pointed to the legislative policy behind HRS § 853-1, which aimed to provide "first-time, accidental, or situational offenders" with an opportunity to maintain a clean record.  In light of these factors, defense

---

[13]    HRS § 853-1(a) provides:

Upon proper motion as provided by this chapter:

(1)    When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor;
(2)    It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and
(3)    The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law,

the court, without accepting the plea of nolo contendere or entering a judgment of guilt and with the consent of the defendant and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.

counsel asked the court to let her "prove to you that she's entitled to have her record free."

The State argued that deferral would not be appropriate for the sexual assault of a minor by a person in a position of authority.  It characterized Satoafaiga's crime as not an "accidental" or "situational" one but rather a crime committed over a long period that bore "grooming aspects."[14]

The court found that the first prong of the HRS § 853-1 analysis was met because Satoafaiga voluntarily pleaded no contest before trial.  Turning to the latter two prongs, the court first noted that Satoafaiga, at twenty-seven, had been more than twice the age of the CW and "should have known twice as much.  Twice as mature, allegedly."  The court acknowledged the "glowing" letters from friends, family, and colleagues in the PSI report but pointed out that Satoafaiga's relationship with the CW was "a different kind of relationship.  It was a

---

[14]    Satoafaiga argued in the circuit court that by asserting "[t]here are certain crimes that do not deserve a deferral," the State improperly implied that Satoafaiga was ineligible for deferred acceptance of her plea based on the offense she committed.  However, when defense counsel brought up Satoafaiga's eligibility for deferred acceptance, the court agreed she was eligible, and the prosecutor clarified she was not arguing against eligibility.
        Satoafaiga pressed this argument on appeal, but it was rejected by the ICA.  State v. Satoafaiga, 149 Hawaiʻi 103, 482 P.3d 566, 2021 WL 928443 at *5 (App. Mar. 11, 2021) (SDO).  Because we see no indication in the record that the trial court believed Satoafaiga to be ineligible for deferred acceptance of her plea, we do not address this argument further.

child with an adult.  It was with someone who's supposed to be her mentor[.]"

The court next turned to whether Satoafaiga had taken responsibility for her actions: "Have you truly taken responsibility and apologized?  I guess does it appear that you're unlikely to engage in such a criminal course of conduct again?"  It referred to a letter to the court included in the PSI report where Satoafaiga stated "[i]nappropriate text messages were sent and and [sic] received and I am truly ashamed and embarrassed of my inappropriate conduct" and "I am completely remorseful that I had engaged in inappropriate text messaging with [the CW]."  The court pointed out, "Well, you do admit in your letter that you engaged in inappropriate text messages."  However, the court went on:

> But this was more than text messaging.  It was penetration with a finger to a vagina.  And the problem is, is that inappropriate text messaging might be a few messages here and there or maybe even a couple of messages here and there, but 15,978 messages were exchanged. . . . It means there was an exchange going on between the two of you.  So talk about some inappropriate behavior.

Noting the number of messages – almost 16,000 over approximately four months – and their explicit content,[15] the

---

[15]     The text messages discovered as a result of the execution of the cell-phone warrants documented at least three different sexually explicit conversations on three different days, including the April 16, 2017 exchange that ultimately alerted Aunt and Uncle to the relationship.  The earliest of these documented exchanges took place on March 18, 2017.

court concluded that this was not a "one-time incident" and "definitely more than inappropriate text messaging." The court next contrasted Satoafaiga's behavior with the mission of the Club. Finally, it concluded:

> [E]verything you did to her, besides the digital penetration and the custodial interference, dealing with taking her out to the breakwater when she was supposed to be going home, and her guardians come to pick her up from the Boys & Girls Club and she's not there, and they're going crazy, where's my kid, where's my daughter, looking all over for her. And at two o'clock or four o'clock the next morning, finally a phone call comes in from your partner . . . letting [Aunt] know that the child is at your house. So she's gone for, I don't know, 4:30 in the afternoon the day before to like 3:00 or 4:00 a.m. the next morning. She's in your -- she's in your trust, she's in your care this whole time. You were responsible for her, and she ends up with hickeys on her chest during this time. I mean, talk about a negative influence on a child.

The court found Satoafaiga was likely to reoffend and that the ends of justice and the welfare of society required that she should presently suffer the penalty imposed by law. Consequently, it denied the DANC motion.

The court next turned to sentencing. The State characterized Satoafaiga's letter in the PSI report as demonstrating "complete denial over the facts of the relationship" and claimed that she still "is not taking full responsibility." It argued that she used the CW's vulnerabilities to "target[] a struggling person, a struggling child." Satoafaiga responded by repeating the positive assessment in the PSI report, pointing to her stable employment

and support from family and friends.  She also pointed out in response to the court's mention of "digital penetration" during the DANC discussion that:

> [T]he defendant was able to get a plea agreement, and the government had dismissed the felony.  So with all due respect, there is no allegation of digital penetration, and to the extent that the Court may have been misled about that, you know, I am -- want to bring it to the Court's attention that that is inaccurate, your Honor. She pleaded no contest.

She argued that her purported lack of remorse should not be used against her.  Although she maintained she had taken responsibility, she argued that "[a] person can choose to accept the government's plea even if they're innocent" and that, in light of her no-contest plea, the court should not use her "lack of accepting full responsibility as a criteria."  Defense counsel concluded that "[s]he has a history of no criminal involvement whatsoever.  She's a good person who made a bad mistake[.]"  Finally, Satoafaiga personally addressed the court, acknowledging that she "let a lot of people down" but maintaining "a lot of what has been said is also not true."

In imposing sentence, the court again mentioned the volume and inappropriate content of the text messages between Satoafaiga and the CW.  It acknowledged defense counsel's argument with respect to the felony count having been dismissed:

> So the act that took place -- and I understand, Mr. Aluli, it's not sexual assault in the first degree. Thank you for correcting me. It's sexual assault in the fourth degree. But it still occurred at the Boys & Girls Club, I think in the upper room. This inappropriate activity between you and the juvenile, you and the minor did happen. It happened.

Pointing to the text messages and inappropriate pictures as well as the gifts Satoafaiga allegedly provided the CW, the court observed that "grooming is what comes to mind here." The court sentenced Satoafaiga to a one-year prison term for each count, to run concurrently, with credit for time served.

### 2. ICA proceedings

Satoafaiga appealed the denial of her DANC motion. Her appeal raised a number of arguments, all aimed at demonstrating that the trial court abused its discretion when it denied the motion. She argued, first, that the trial court's finding that she was likely to reoffend exceeded the bounds of reason. Further, it erred by considering the "uncharged conduct" of sexual penetration and compounded the error by considering her lack of remorse for that conduct. The illicit text messages exchanged with the CW, she argued, were irrelevant. Finally, the court erred by disregarding the public policy behind HRS chapter 853, which demands leniency for offenders like Satoafaiga.

In a summary disposition order, the ICA first found that the circuit court did not abuse its discretion by denying Satoafaiga's DANC motion. State v. Satoafaiga, 149 Hawai'i 103, 482 P.3d 566, 2021 WL 928443 at *4 (App. Mar. 11, 2021) (SDO).  It rejected the argument that the trial court was barred from considering digital penetration as uncharged conduct, because despite the amendment of Count II, the indictment still alleged an act of penetration.  Id.  With respect to Satoafaiga's argument that the court improperly used her failure to admit responsibility against her, the ICA held, "It was within the ambit of the court's authority to consider Satoafaiga's lack of remorse, or lack of taking responsibility[.]"  Id. at *5.

Satoafaiga sought review in this court; her arguments in her application for certiorari largely repeat her multifaceted attack on the circuit court's denial of her DANC motion.

### III.  STANDARD OF REVIEW

The grant or denial of a motion for a DANC plea is within the discretion of the [trial] court and will not be disturbed unless there has been manifest abuse of discretion. State v. Tom, 69 Haw. 602, 603, 752 P.2d 597, 597 (1988).  "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." State v. Davia, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998) (internal quotation marks and citation omitted).

16

State v. Klie, 116 Hawai'i 519, 521-22, 174 P.3d 358, 360-61 (2007).

## IV. DISCUSSION

### A. The Circuit Court Did Not Exceed the Bounds of Reason by Finding Satoafaiga Likely to Reoffend

Satoafaiga argues that because HRS chapter 853 seeks to benefit defendants with clean records like her, the court erred when it nevertheless denied her DANC motion. The court's decision exceeded the bounds of reason, she argues, because as a first-time offender and in light of the favorable factors in the PSI report, she was not likely to reoffend. Citing State v. Medeiros, she asserts that the court abused its discretion by denying her motion for a DANC solely based on the elements of the offense she committed. 146 Hawai'i 1, 14, 454 P.3d 1069, 1082 (2019). If uncorrected, the ICA decision would "completely nullify[] Hawai'i's [DANC] criminal procedure," as every defendant would be ineligible based solely on the commission of their offense. The legislature authorized the deferred acceptance of pleas in HRS chapter 853 in order to provide certain defendants, "particularly . . . first time, accidental, or situational offenders," with "the opportunity to keep [their] record free of a criminal conviction." 1976 Haw. Sess. Laws Act 154, § 1 at 279; see also State v. Putnam, 93

Hawaiʻi 362, 368, 3 P.3d 1239, 1245 (2000) (discussing the legislative history).  Especially where youth are involved, eventual dismissal may prove "more conducive to offender rehabilitation and crime prevention than the deterrent effects of a conviction and sentence" with their accompanying stigma and career roadblocks.  1976 Haw. Sess. Laws Act 154, § 1 at 279.

The decision to grant a motion for a deferred acceptance "is properly within the discretionary province of a trial judge."  State v. Martin, 56 Haw. 292, 294, 535 P.2d 127, 128 (1975).  However, there are certain guidelines in making the decision.  Courts "should always consider all of the possible alternatives," whereas "blind adherence" to predetermined rules fails to provide "enlightened and just resolve" of the motion for a DANC.  Id.  Thus, while courts have "wide latitude in the selection of penalties," State v. Murray, 63 Haw. 12, 25, 621 P.2d 334, 342 (1980), that discretion is not limitless and may not be exercised in a manner that is arbitrary and capricious, Martin, 56 Haw. at 294, 535 P.2d at 128-29 (finding sentencing court "arbitrarily and capriciously" denied a motion for a DAG and reversing); see also Medeiros, 146 Hawaiʻi at 11, 454 P.3d at 1079 (overturning

18

denial of a motion for a DANC as an abuse of discretion).[16]

According to Satoafaiga, the finding that she was likely to reoffend clearly exceeded the bounds of reason: "The trial court's finding of future criminality, and the ICA's affirmation of that finding, completely disregarded Petitioner's lack of criminal history as being the best predictor of future behavior." Satoafaiga's lack of a criminal record, together with all the other factors weighing in her favor, made the finding that she was likely to reoffend an abuse of discretion. Moreover, denying the motion for a DANC belied HRS chapter 853's legislative policy of benefiting youthful, first-time offenders.

To the extent that Satoafaiga's argument is that all first-time offenders who commit DANC-eligible crimes are entitled to deferred acceptance, this argument has no merit. HRS § 853-1 provides that where the statute's requirements are met, a trial court "may defer further proceedings." (Emphasis added.) The import of the word "may" in granting discretion to the trial court is clear. Further, the same legislative

---

[16] Satoafaiga argues that the ICA applied the incorrect standard of review when it stated, "[W]e cannot conclude that the Circuit Court's determination that Satoafaiga did not satisfy the second and third criteria was arbitrary or capricious." Satoafaiga, 2021 WL 928443 at *4 (emphasis added). But this language appears to come from Martin, wherein this court explained the circumstances under which a court abuses its discretion in granting or denying a motion for a DANC. 56 Haw. at 294, 535 P.2d at 128.

history that Satoafaiga cites in support of her position shows that HRS § 853-1 sought "to establish a means whereby <u>a court in its discretion</u> may defer acceptance" of a plea.  <u>Putnam</u>, 93 Hawai'i at 367-68, 3 P.3d at 1244-45 (emphasis added) (quoting 1976 Haw. Sess. Laws Act 154, § 1 at 279).  The legislature easily could have made all or some first-time offenders automatically entitled to a DANC; instead, it chose to grant courts discretion to decide when a DANC is merited.  Because Satoafaiga's interpretation of HRS chapter 853 runs counter to the statute's clear language and the legislative policy behind it, we decline to adopt it.

Moreover, the court did not abuse its discretion by finding Satoafaiga likely to reoffend notwithstanding her lack of criminal history and other factors weighing in her favor.  The court explicitly considered Satoafaiga's age but balanced it against the age of the CW.  It pointed to the nearly 16,000 text messages between Satoafaiga and the CW over an approximately four-month period to conclude that the offense was not a one-time, accidental, or situational incident.  In other words, the circuit court did not disregard public policy; rather, in weighing the HRS § 853-1 factors and considering the record, it determined that public policy supported the denial of the motion.  That there were factors on both sides of the

scale does not mean the circuit court "clearly exceeded the bounds of reason" and abused its discretion. Klie, 116 Hawai'i at 522, 174 P.3d at 361. The DANC determination requires balancing countervailing factors, which is what the circuit court did here. See State v. Buchanan, 59 Haw. 562, 563, 584 P.2d 126, 127 (1978) ("However persuasive we might regard appellant's presentation in support of the motion, the reasons expressed by the court in denying the motion are relevant and significant. No abuse of discretion appears."). There was sufficient basis in the record for the circuit court to find that Satoafaiga was likely to reoffend and that the ends of justice and the welfare of society required her immediate punishment.

For the same reasons, Satoafaiga's argument that the circuit court's decision violated Medeiros fails. In Medeiros, the defendant pleaded no contest to two offenses related to night hunting and then moved for a DANC. 146 Hawai'i at 4-5, 454 P.3d at 1072-73. In denying the DANC motion, the circuit court noted the manner in which the defendant committed the crime (for example, wearing a camouflage T-shirt) and the apparently inconsistent statements he made to officers when apprehended. Id. at 10-11, 454 P.3d at 1078-79. We noted that Medeiros was a youthful, first-time offender and that he

21

apologized to the court and took responsibility for his offenses. Id. On this record, the circuit court abused its discretion by denying the motion for a DANC. Id. In her concurrence, Justice Nakayama explained that the circuit court's reasons for denying Medeiros's motion for a DANC were "merely elements of the offenses . . . to which Medeiros pled." Id. at 14, 454 P.3d at 1082 (Nakayama, J., concurring).

As an initial matter, Medeiros does not foreclose consideration of the circumstances of an offense to assess a motion for a DANC. In fact, we have upheld denials of motions for DANCs and DAGs based, at least in part, on this factor. See Buchanan, 59 Haw. at 563, 584 P.2d at 127 ("The record in the present case shows consideration of the [DAG] motion on its merits, and denial of the motion only after review by the court of the circumstances of the offense as well as testimony offered by appellant." (emphasis added)). Our holding in Medeiros instead prohibits courts from denying a motion for a DANC based on facts that would apply to "any other DANC plea-eligible defendant charged with the same underlying offenses." 146 Hawai'i at 11, 454 P.3d at 1079.

Here, as discussed, the circuit court went beyond the fact that Satoafaiga allegedly subjected the CW to "sexual contact" in denying the DANC motion. Instead, it considered

among other factors Satoafaiga's age relative to the CW, her position of authority and trust, the thousands of text messages between the two over approximately four months, the later runaway incident, and Satoafaiga's long-term negative influence on the CW. Contrary to Satoafaiga's assertions, these are not elements of the offense or factors shared by all defendants who plead guilty or no contest to Sexual Assault in the Fourth Degree. Rather, they are circumstances particular to Satoafaiga's situation, which the trial court properly weighed against the mitigating factors she cited. Thus, there was no violation of the rule we laid out in Medeiros.

**B. The Court Abused Its Discretion by Considering Conduct – Sexual Penetration – that Was Excluded by the Offense Satoafaiga Pleaded to**

Although the court did not abuse its discretion in weighing the HRS § 853-1 factors, it abused its discretion when it considered conduct excluded by one of the offenses Satoafaiga pleaded to.

Satoafaiga argues that the circuit court should not have held her responsible for the "uncharged conduct" of sexual penetration. Although penetration was charged in the indictment and supported by evidence in the record, we agree that it should not have been considered by the circuit court in weighing the DANC motion. The charge to which Satoafaiga

ultimately pleaded no contest – Sexual Assault in the Fourth Degree - contained as a necessary element "sexual contact." HRS § 707-733(1)(a).  In turn, "sexual contact" is defined by statute to mean "any touching, other than acts of 'sexual penetration', of the sexual or other intimate parts of another."  See HRS § 707-700 (emphasis added).  Consequently, Satoafaiga's plea of no contest to Sexual Assault in the Fourth Degree necessarily excluded the allegation that she committed sexual penetration.  Thus, the circuit court abused its discretion by considering conduct that, per her plea, Satoafaiga logically could not have committed.

In examining when a court abuses its discretion in denying a DANC motion, we look to our sentencing cases for guidance.  While not controlling in the DAG/DANC context, these cases provide a useful starting point – especially, as here, where there are no DAG/DANC cases directly on point.[17]

_____

[17]     Both the sentence and the decision to defer it are decisions within a judge's discretion; both determine whether and how a defendant will be punished.  See State v. Hussein, 122 Hawai'i 495, 509-10, 229 P.3d 313, 327-28 (2010), as corrected (Apr. 28, 2010) (reviewing the factors judges must consider in imposing a sentence); Martin, 56 Haw. at 294, 535 P.2d at 128 (describing deferred acceptance as part of the "sentencing process" and stressing the importance of considering all available alternatives).  Moreover, both sentencing and the DANC decision turn on the defendant's culpability; the likelihood of reoffending; and the public interest in safety, rehabilitation, and retributive justice.  Compare HRS § 853-1 with HRS § 706-606 (2014).
     Accordingly, the ICA was incorrect to distinguish a case – State v. Kamana'o, 103 Hawai'i 315, 82 P.3d 401 (2003) - based on the fact that it arose in the sentencing context.  The ICA relied on State v. Oshiro, 69 Haw.
(continued . . .)

24

While courts have broad discretion in the sentencing context, they abuse that discretion when they base their decisions on "unsubstantiated allegation[s]" of uncharged crimes.  State v. Vellina, 106 Hawai'i 441, 450, 106 P.3d 364, 373 (2005).  In State v. Nunes, we held that punishing a defendant for uncharged crimes "raises serious constitutional questions":

> While a court has broad discretion in imposing a sentence, and can consider the candor, conduct, remorse and background of the defendant as well as the circumstances of the crime and many other factors, a judge cannot punish a defendant for an uncharged crime in the belief that it too deserves punishment.

72 Haw. 521, 525, 824 P.2d 837, 840 (1992).

In Nunes, the circuit court sentenced the defendant in part based on its inference that he asked the complaining witness to lie for him.  We noted that "there is nothing in the record before us that would support a conclusion that defendant's conduct toward other witnesses supports increasing his sentence."  Thus, it was improper and in violation of the defendant's constitutional rights to sentence him on that

---

(. . . continued)
438, 442, 746 P.2d 568, 570 (1987), for the proposition that "the denial of a motion for DANC is neither a conviction nor a sentence nor a punishment." Satoafaiga, 2021 WL 928443 at *5.  Of course, the ICA was correct in noting that a DANC is not a sentence.  In Oshiro, this distinction was outcome determinative because the State only had statutory authority to appeal sentences, and not grants of DANCs or DAGs.  69 Haw. at 442-43, 746 P.2d at 570-71 (citing HRS § 641-13 (1985)).  In general, however, we find that sentencing cases are persuasive, though not controlling authority, in the DAG/DANC context.

basis.  Id.  Similarly, in Vellina, we held that the circuit court clearly exceeded the bounds of reason when it imposed consecutive terms based on the prosecutor's allegation – with no basis in the record – that the defendant transferred firearms he stole to a drug dealer.  106 Hawai'i at 450, 106 P.3d at 373.

Likewise, a court may not base its sentencing decision on conduct for which the defendant was acquitted. State v. Koch, 107 Hawai'i 215, 225, 112 P.3d 69, 79 (2005) (holding sentencing court could not consider allegations of drug dealing when jury acquitted the defendant of "dealing charges").  Other jurisdictions have joined Hawai'i in holding that once a jury has rendered a verdict of acquittal, the sentencing court cannot consider the allegations underlying the acquitted counts.  See, e.g., State v. Melvin, 258 A.3d 1075, 1087-1090, 1093-94 (N.J. 2021) (reviewing state and federal authority and holding that the sentencing court may not consider conduct excluded by a jury verdict).

Here, given the specific elements of the offense to which Satoafaiga pleaded no contest, the court was precluded from considering allegations of sexual penetration.  Normally, a lesser-included offense does not exclude the greater

26

offense.[18]  Where two offenses differ only in severity, or

because one contains an additional element, one can logically

commit both in the same act; committing the lesser offense does

not exclude the possibility that one has also committed the

greater one.  This is the normal understanding of included

offenses.

Not so with Sexual Assault in the First Degree and

Sexual Assault in the Fourth Degree.  To be guilty of fourth-

degree sexual assault under HRS § 707-733(1)(a), one must

commit an act of sexual contact, defined as "any touching,

other than acts of 'sexual penetration.'"  HRS § 707-700.  But

in order to be convicted of first-degree sexual assault, one

must commit an act of sexual penetration.  HRS § 707-730.  One

cannot logically commit, at the same time, an act of sexual

---

[18]    HRS § 701-109(4) (2014) defines lesser-included offenses as follows:

> A defendant may be convicted of an offense included in an offense charged in the felony complaint, indictment, or information.  An offense is so included when:
>
> (a)  It is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
> (b)  It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
> (c)  It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

penetration and an act "other than [an] act[] of 'sexual penetration.'"[19]  The fourth-degree offense may, depending on the circumstances, be a lesser-included offense of the first-degree offense because it entails a less serious injury or risk to the complainant.  See State v. Malave, 146 Hawai'i 341, 351, 463 P.3d 998, 1008 (2020), as amended (Apr. 22, 2020) (holding sexual contact "carries a less serious injury or risk" than sexual penetration).  But nonetheless, in this instance, the lesser-included offense necessarily excludes the greater offense.[20]

Thus, as in Nunes and Vellina, here, the circuit court erred by punishing Satoafaiga for conduct she could not properly be held accountable for.  Unlike in those cases, there

---

[19]    The exemptive language in the definition of sexual contact was added as part of a redrafting that aimed to supersede this court's opinion in State v. Mueller, 102 Hawai'i 391, 395, 76 P.3d 943, 947 (2003), which required prosecutors to prove some penetration, however slight, to convict a defendant of first-degree sexual assault involving an act of cunnilingus. 2004 Haw. Sess. Laws Act 61, §2 at 302-03; S. Stand. Comm. Rep. No. 3121, in 2004 Senate Journal, at 1558.  However, the Mueller court suggested that a Modica problem would result if cunnilingus could be penalized, on its own, as both sexual contact and sexual penetration.  See Mueller, 102 Hawai'i at 398-97, 76 P.3d at 948-49; State v. Modica, 58 Haw. 249, 250-51, 567 P.2d 420, 421-22 (1977).  Thus, the exemptive language in the definition of sexual contact may have seemed necessary to avoid this result.  In any case, because the language of HRS § 707-700 admits no interpretation other than the one Satoafaiga gives it, we read it to exclude acts of sexual penetration from any sexual-contact offense.

[20]    For this reason, although the ICA was correct to note that Sexual Assault in the Fourth Degree may be a lesser-included offense of Sexual Assault in the First Degree, it erred when it noted that "necessarily any allegation sufficient to establish the latter will also establish the former."  Satoafaiga, 2021 WL 928443 at *4 n.5.

was support in the record for the conduct Satoafaiga was penalized for – the alleged act of sexual penetration.  But that evidence was essentially negated to the extent it could not comport with her plea.  We find this case to be analogous to Koch, where we held that the circuit court abused its discretion when it "assumed that Koch had engaged in unlawful conduct of which he had been expressly acquitted."  107 Hawaiʻi at 225, 112 P.3d at 79.  Once the jury acquits a defendant, the conduct underlying the acquitted counts cannot be considered.  Likewise, once a defendant enters a valid plea that becomes the basis for their conviction, the court may not consider conduct logically excluded by that plea.  Thus, by denying Satoafaiga's DANC motion in part based on an act of penetration, the circuit court disregarded rules or principles of law or practice to her substantial detriment.[21]

---

[21]     The State cited State v. Lucas, 141 Hawaiʻi 146, 406 P.3d 369, 2017 WL 5899894 (App. Nov. 30, 2017), for the proposition that:

> [T]here is a distinction between improperly considering uncharged conduct for purposes of sentencing, and properly considering the same for purposes of ruling on a DANC motion.  Thus, even if the Circuit Court had considered uncharged conduct in ruling on [Satoafaiga]'s DANC motion, doing so would not have been an abuse of discretion.

(Citation omitted.)

However, as discussed, sentencing cases have persuasive value in the DANC context.  Here, the circuit court improperly considered conduct excluded by Satoafaiga's offense of conviction, requiring vacatur of the denial of her DANC motion.

This argument holds notwithstanding that Satoafaiga stipulated to a factual basis to support the charges she pleaded to.  The State argues, and the ICA held, that because the only allegation underlying Count II was an act of sexual penetration, Satoafaiga stipulated to that act and the trial court properly considered it.  See Satoafaiga, 2021 WL 928443 at *4 ("The plea agreement further provided, inter alia, that Satoafaiga . . . agreed to a factual basis to support the charges in Count II . . . . There was no other factual allegation or conduct charged in Count II."  (footnote omitted)).

We disagree.  A plea of no contest does not require the defendant to admit guilt.  State v. Merino, 81 Hawai'i 198, 217, 915 P.2d 672, 691 (1996) (citing State v. Gomes, 79 Hawai'i 32, 33 n.3, 897 P.2d 959, 960 n.3 (1995)); see also Gomes, 79 Hawai'i at 38 & n.12, 897 P.2d at 965 & n.12 (noting that although the defendant stipulated to a factual basis, he did not explicitly admit that he committed the charged offenses and noting the "subtle distinction between a plea of guilty and a plea of no contest").  Unlike with a guilty plea, there is no requirement that the court establish a factual basis for a no

contest plea.[22]  <u>State v. De Guair</u>, 108 Hawai'i 179, 191, 118 P.3d 662, 674 (2005).  Satoafaiga's stipulation only admits that there is "a factual basis to support these charges"; it does not admit to the particular facts alleged by the indictment.  Thus, Satoafaiga's stipulation does not negate the effect of HRS §§ 707-700 and 707-733 to preclude consideration of sexual penetration.

While it is not entirely clear from the record what weight the trial court gave to the alleged act of penetration, it is clear that it factored into the court's decision.  In considering the DANC motion, following a discussion of the explicit text messages between Satoafaiga and the CW, the court observed, "But this was more than text messaging.  <u>It was penetration with a finger to a vagina</u>."  (Emphasis added.)  The court also mentioned the "digital penetration" a second time:

---

[22]     Nevertheless, judges must be mindful of their obligation to accept no contest pleas "only after due consideration of the views of the parties and the interest of the public in the effective administration of justice."  Hawai'i Rules of Penal Procedure (HRPP) Rule 11(b) (2014).  In some cases, due consideration may entail establishing the factual basis for a no contest plea, even though no such inquiry is explicitly mandated and the defendant need not elaborate on their conduct.  Requiring the prosecutor to explain the factual basis for a no contest plea is "the better practice" as it prevents misunderstanding and clarifies the record for appeal. 5 Wayne R. LaFave et al., <u>Criminal Procedure</u> § 21.4(a) n.23 (4th ed. 2021) ("Even where no factual basis is required, determining the factual basis by inquiry of the prosecutor is said to be 'the better practice' because it aids inquiry on appeal into the sufficiency of the charge." (quoting <u>Ranke v. United States</u>, 873 F.2d 1033, 1037 (7th Cir. 1989))).  Indeed, we have held that although a court is not obligated to establish a factual basis in the record for a no contest plea, it has the discretion to do so.  <u>Merino</u>, 81 Hawai'i at 219, 915 P.2d at 693.

"I think everything you did to her, besides the <u>digital penetration</u> and the custodial interference . . . . I mean, talk about a negative influence on a child." (Emphasis added.) And later, after defense counsel pointed out that "there is no allegation of digital penetration" because the first-degree charge had been dismissed, the court acknowledged the correction but observed that "it still occurred at the Boys & Girls Club, I think in the upper room. This inappropriate activity between you and the juvenile, you and the minor did happen. It happened." While this last exchange took place after the DANC decision and during the court's sentencing discussion, it further suggests that the penetrative act of which Satoafaiga had been accused weighed on the court's DANC decision. Together, these references show that Satoafaiga's alleged act of digital penetration factored into the court's decision when it denied the DANC motion.

Likewise, the circuit court erred by factoring into its decision Satoafaiga's failure to accept responsibility for the alleged sexual penetration. In considering the DANC motion, the court addressed Satoafaiga's lack of remorse for the penetration:

> Have you truly taken responsibility and apologized? I guess does it appear that you're unlikely to engage in such a criminal course of conduct again? Well, you do admit in your letter that you engaged in inappropriate

> text messages. But this was more than text messaging.  <u>It
> was penetration with a finger to a vagina.</u>

(Emphasis added.)

While a court generally can consider a defendant's lack of remorse in the sentencing context, <u>State v. Kamana'o</u>, 103 Hawai'i 315, 321, 82 P.3d 401, 407 (2003), in this case the court was explicitly excluded from considering penetration.  It could not obviate this limitation by penalizing Satoafaiga's failure to express remorse for the same conduct.  Thus, it was improper for the court to take into account whether Satoafaiga had "taken responsibility and apologized" for an act of sexual penetration.[23]  Accordingly, the circuit court's judgment must be vacated to the extent that it denied the motion for a DANC.

We do not mean to imply that any time a defendant pleads to a lesser-included offense in exchange for the dismissal of a greater one, the court may not consider the circumstances leading to the greater charge.  For example, if the heinous or aggravated nature of the acts committed points to a sentence on the upper end of the permitted sentencing range, the judge may consider it.  <u>See</u> <u>State v. Karwacki</u>,

---

[23]    Satoafaiga appears to argue for a rule displacing the analysis in <u>Kamana'o</u> and categorically barring judges from considering a defendant's remorse in cases involving a no contest plea.  Because we hold that the underlying conduct for which Satoafaiga was asked to apologize was improperly considered, we do not address whether <u>Kamana'o</u> properly applies in the context of a no contest plea.

1 Haw. App. 157, 159, 616 P.2d 226, 228 (1980); accord HRS § 706-606 (2014) (directing sentencing courts to consider "nature and circumstances of the offense"). Defendants who plead to a lesser offense after being charged with a greater one do not thereby insulate themselves from the gravity of their conduct. See State v. Modica, 58 Haw. 249, 251, 567 P.2d 420, 422 (1977) ("[I]t is generally no defense to an indictment under one statute that the accused might have been charged under another.").

However, just as a court may not penalize a defendant for conduct with no support in the record, it cannot hold a defendant responsible for conduct that they could not logically have committed, given their offense of conviction. Consequently, we hold that the trial court abused its discretion by considering sexual penetration, and remand for reconsideration of the DANC motion.

## C. On Remand, the Trial Court Has Broad Discretion to Consider the Circumstances of the Offense and Defendant

Because we remand for reconsideration of the DANC motion, we provide guidance as to what the circuit court may and may not consider. In general, judges have broad discretion to consider the facts and circumstances of the defendant and the offense in making a DANC determination. Thus, Satoafaiga's

34

arguments that the trial court should not have considered, inter alia, her inappropriate text messages with the CW or the sentencing factors in the PSI report are misplaced.

Satoafaiga's arguments cut against the principle that judges have broad discretion in deciding whether to grant DAG/DANC motions. As noted, HRS § 853-1(a) sets forth the criteria a trial court should examine in its determination, which are: (1) whether the defendant is not likely again to engage in a criminal course of conduct; and (2) whether the ends of justice and the welfare of society require that the defendant presently suffer the penalty imposed by law. In making these determinations, the court may consider sentencing factors discussed in the PSI report, including the "nature and circumstances of the offense and the history and characteristics of the defendant." HRS § 706-606.

The role of the PSI report illuminates the importance of judges taking the facts and circumstances into account. These reports focus the judge's attention on matters including "the circumstances attending the commission of the crime" and "[t]he defendant's history of delinquency or criminality," see HRS § 706-602 (2014), which are also relevant to the HRS § 853-1(a) factors.

In the DAG/DANC context, a court cannot intelligently decide whether a defendant is likely to reoffend nor whether their crimes merit immediate punishment without understanding the nature of the offense and the defendant's character and circumstances. Thus, judges not only may but <u>must</u> consider the defendant's particular situation in DANC proceedings as well as in sentencing. Cf. <u>Martin</u>, 56 Haw. at 294, 535 P.2d at 128 (holding, in the DAG context, that "[d]iscretionary action must be exercised on a case-by-case basis").

Nevertheless, Satoafaiga argues that the circuit court should not have relied on "uncharged, irrelevant evidence of text messaging" in denying the DANC motion.[24] And she asserts that, other than some of the factors supporting her DANC motion, the Assessment Factors listed in the PSI report were "irrelevant imposition-of-jail factors" that both the ICA and the circuit court erroneously considered.

Far from being irrelevant, the sexually explicit text messages bore on the relationship between Satoafaiga and the CW and thus on the nature of the offense. The three or four

---

[24] In her application for certiorari, Satoafaiga describes the text-messaging evidence as "uncharged." However, she does not elaborate on what uncharged offenses the circuit court may have considered when it took the text messages into account. Therefore, although <u>Nunes</u> and <u>Vellina</u> prohibit consideration of uncharged conduct, we do not address how these cases apply to the sexually explicit text-message exchanges in this case.

months of prolonged communication between her and the CW made the two incidents for which Satoafaiga was ultimately convicted appear more like a long-term pattern of conduct than a momentary lapse of judgment.[25]  Cf. State v. Barrios, 139 Hawaiʻi 321, 332-33, 389 P.3d 916, 927-28 (2016) (holding the circuit court properly considered the long-term nature of the abuse and the fact that defendant "groomed" his victim).  And indeed, the trial court so found here.  The text messages were relevant to the court's determination regarding the HRS § 853-1(a) factors.  Therefore, the court was within its discretion to consider the text messages.

Satoafaiga also argues that the Assessment Factors in the PSI report, "other than those factors that comment on the likelihood of future criminality, are simply not relevant to" the DANC analysis.  Thus, Satoafaiga contends, while she properly quoted the Report's findings to the trial court with respect to her lack of a criminal record and low recidivism

---

[25]     In this regard, this case resembles State v. Zimmerman, 131 Hawaiʻi 60, 314 P.3d 850, 2013 WL 6507550 (App. Dec. 11, 2013) (SDO).  In Zimmerman, the defendant pleaded guilty to second-degree murder and kidnapping; during sentencing, the court considered an email the defendant sent to his victim demeaning and threatening her.  Id. at *1.  Zimmerman argued that the court improperly punished him for writing the email, which was copied to nineteen other email addresses and included explicit photographs of the victim.  Id. at *1-*2.  The ICA rejected this argument, holding that the email "illuminated the abusive nature of the relationship between Zimmerman and his victim."  Id. at *2.  Likewise, here, the text messages reflected the relationship between Satoafaiga and the CW; it was in the context of this relationship that the offense occurred.

risk, the ICA erred when it considered the findings that Satoafaiga "acted without provocation or without reasons" and her actions "suggest a significant lack of control and good judgment." Satoafaiga, 2021 WL 928443 at *4.

Satoafaiga cannot so easily dissect the record to say what is relevant and what is not. As discussed, a broad range of considerations will be relevant to whether Satoafaiga is likely to reoffend and whether justice and social welfare require her present punishment. Thus, the PSI report's findings that Satoafaiga acted without provocation and demonstrated poor judgment are germane to the DANC decision – no less so than its findings, on the other hand, that she had a stable history of employment and a strong support system. All of these factors go to the nature and context of the offense and the circumstances of the defendant, and were within the trial court's discretion to consider.

Thus, while the circuit court on remand may not consider any allegations from the PSI report or elsewhere that Satoafaiga committed an act of sexual penetration, we do not otherwise limit its discretion. Normally, the manner in which a defendant commits a crime is relevant to the DANC decision. See Buchanan, 59 Haw. at 563, 584 P.2d at 127 (approving the trial court's consideration of the offense conduct in denying a

DAG motion). But here, because of the unusual circumstances of this case, the court is barred from considering the particular manner in which Satoafaiga committed the crime.

Nevertheless, the offense to which Satoafaiga pleaded remains relevant to whether a DANC is merited. The court below may consider that Satoafaiga pleaded no contest to an offense involving sexual contact with a minor. As discussed, her stipulation concedes that the State can prove the elements of Sexual Assault in the Fourth Degree, including sexual contact - in this case, with a twelve-year-old under her charge. Thus, the court may take into account that some acts of sexual contact occurred between Satoafaiga and the CW. The court may also consider the circumstances surrounding the offense she pleaded to, for example that it is alleged to have taken place at the Club and in the context of an ongoing "grooming" relationship with the CW.

## V. CONCLUSION

For the foregoing reasons, we vacate the ICA's April 13, 2021 judgment on appeal to the extent that it affirmed the denial of Satoafaiga's DANC motion and vacate the circuit court's January 22, 2020 judgment of conviction with respect to its denial of the DANC motion. Inasmuch as Satoafaiga has not challenged her sentence on appeal, the

judgments are affirmed as to the sentence.  We remand this matter to the circuit court with instructions to reconsider Satoafaiga's DANC motion in a manner consistent with this opinion.

Hayden Aluli
for petitioner

Richard B. Rost
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

