**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000633
14-JUN-2022
07:53 AM
Dkt. 55 SO**

NO. CAAP-18-0000633

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
DEREK DUNG HUNG DUONG, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2PC151000138(1))

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Wadsworth, JJ.)

Defendant-Appellant Derek Dung Hung Duong (**Duong**)
appeals from the August 2, 2018 Judgment; Conviction and
Probation Sentence; Terms and Conditions of Probation; Notice of
Entry (**Judgment**) in the Circuit Court of the Second Circuit
(**Circuit Court**).[1]

On March 2, 2015, Plaintiff-Appellee the State of
Hawaiʻi (**State**) charged Duong by felony information with four

---

[1]     The Honorable Rhonda I.L. Loo presided.

counts: (1) Place to Keep Unloaded Firearms Other Than Pistols and Revolvers in violation of Hawaii Revised Statutes (**HRS**) § 134-24(a) (2011);[2] (2) Place to Keep Pistol or Revolver in violation of HRS § 134-25(a) (2011);[3] (3) Place to Keep

---

[2]     HRS § 134-24(a) provides:

> **§ 134-24  Place to keep unloaded firearms other than pistols and revolvers; penalty.**  (a)  Except as provided in section 134-5, all firearms shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following:
> (1)    A place of repair;
> (2)    A target range;
> (3)    A licensed dealer's place of business;
> (4)    An organized, scheduled firearms show or exhibit;
> (5)    A place of formal hunter or firearm use training or instruction; or
> (6)    A police station.
> "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

[3]     HRS § 134-25(a) provides:

> **§ 134-25  Place to keep pistol or revolver; penalty.**  (a)  Except as provided in sections 134-5 and 134-9, all firearms shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following:
> (1)    A place of repair;
> (2)    A target range;
> (3)    A licensed dealer's place of business;
> (4)    An organized, scheduled firearms show or exhibit;
> (5)    A place of formal hunter or firearm use training or instruction; or
> (6)    A police station.
> "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

Ammunition in violation of HRS § 134-27(a) (2011);[4] and (4) Criminal Property Damage in the Second Degree in violation of HRS § 708-821(1)(b) (2014).[5]

On May 2, 2018, prior to trial, Duong entered a no contest plea to all four counts pursuant to a plea agreement with the State, and Duong moved to defer acceptance of his no contest

---

[4]     HRS § 134-27(a) provides:

> **§ 134-27  Place to keep ammunition; penalty.**  (a) Except as provided in sections 134-5 and 134-9, all ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry ammunition in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following:
> (1)     A place of repair;
> (2)     A target range;
> (3)     A licensed dealer's place of business;
> (4)     An organized, scheduled firearms show or exhibit;
> (5)     A place of formal hunter or firearm use training or instruction; or
> (6)     A police station.
> "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the ammunition.

[5]     HRS § 708-821(1)(b) provides:

> **§ 708-821  Criminal property damage in the second degree.**  (1)  A person commits the offense of criminal property damage in the second degree if by means other than fire:
>
> . . . .
>
> (b)     The person intentionally or knowingly damages the property of another, without the other's consent, in an amount exceeding $1,500[.]

plea pursuant to HRS § 853-1(a) (2014)[6] (**DANC**).  On August 1, 2018, at a continued sentencing hearing, Duong decided to "take the conviction," instead of accepting a DANC that would have included 90 days of jail time, and the Circuit Court sentenced Duong to terms of probation of four years on each of Counts 1, 2, and 4, and one year on Count 3, with all terms to be served concurrently.

Duong raises a single point of error on appeal, contending that the Circuit Court erred in denying his motion for DANC.  Duong acknowledges that the Circuit Court did not in fact deny his motion, but rather that the court indicated that it would grant the motion subject to 90 days in jail.  The Circuit Court gave Duong the alternative option of withdrawing his request for a DANC and being sentenced to probation, with no jail

---

[6]    HRS § 853-1 provides, in relevant part:

**§ 853-1  Deferred acceptance of guilty plea or nolo contendere plea; discharge and dismissal, expungement of records.**  (a)  Upon proper motion as provided by this chapter:
    (1)    When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor;
    (2)    It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and
    (3)    The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law,
the court, without accepting the plea of nolo contendere or entering a judgment of guilt and with the consent of the defendant and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.
    (b)  The proceedings may be deferred upon any of the conditions specified by section 706-624.

time. The latter option included a permanent record of his convictions.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Duong's point of error as follows:

In essence, Duong contends that the Circuit Court abused its discretion when the court indicated that it was only willing to grant the motion to defer subject to a 90-day jail term.

As set forth in footnote 6 above, HRS § 853-1(b) specifically provides that a deferral "may be deferred upon any of the conditions specified by section 706-624." HRS § 706-624 (2014) includes, in pertinent parts:

> **§ 706-624 Conditions of probation[.]**
>
> . . . .
>
> (2) Discretionary conditions. The court may provide, as further conditions of a sentence of probation, to the extent that the conditions are reasonably related to the factors set forth in section 706-606 and to the extent that the conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 706-606(2), that the defendant:
>> (a) Serve a term of imprisonment to be determined by the court at sentencing . . . not exceeding eighteen months in class B felony cases, not exceeding one year in class C felony cases, not exceeding six months in misdemeanor cases, and not exceeding five days in petty misdemeanor cases[.]

(Emphasis added).

Also relevant here, HRS § 706-606 (2014) provides:

> **§ 706-606  Factors to be considered in imposing a sentence.** The court, in determining the particular sentence to be imposed, shall consider:
> (1)  The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)  The need for the sentence imposed:
>   (a)  To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>   (b)  To afford adequate deterrence to criminal conduct;
>   (c)  To protect the public from further crimes of the defendant; and
>   (d)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)  The kinds of sentences available; and
> (4)  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The Hawaiʻi Supreme Court recently provided guidance concerning a trial court's broad discretion to consider the circumstances of the offense and the defendant in making a DANC determination, explaining:

> In general, judges have broad discretion to consider the facts and circumstances of the defendant and the offense in making a DANC determination. . . .
>
> [The appellant's] arguments cut against the principle that judges have broad discretion in deciding whether to grant DAG/DANC motions. As noted, HRS § 853-1(a) sets forth the criteria a trial court should examine in its determination, which are: (1) whether the defendant is not likely again to engage in a criminal course of conduct; and (2) whether the ends of justice and the welfare of society require that the defendant presently suffer the penalty imposed by law. In making these determinations, the court may consider sentencing factors discussed in the PSI report, including the "nature and circumstances of the offense and the history and characteristics of the defendant." HRS § 706-606.
>
> The role of the PSI report illuminates the importance of judges taking the facts and circumstances into account. These reports focus the judge's attention on matters including "the circumstances attending the commission of the crime" and "[t]he defendant's history of delinquency or

criminality," see HRS § 706-602 (2014), which are also relevant to the HRS § 853-1(a) factors.

In the DAG/DANC context, a court cannot intelligently decide whether a defendant is likely to reoffend nor whether their crimes merit immediate punishment without understanding the nature of the offense and the defendant's character and circumstances. Thus, judges not only may but <u>must</u> consider the defendant's particular situation in DANC proceedings as well as in sentencing. <u>Cf.</u> [State v.] <u>Martin</u>, 56 Haw. [292,] 294, 535 P.2d [127,] 128 [(1975)] (holding, in the DAG context, that "[d]iscretionary action must be exercised on a case-by-case basis").

<u>State v. Satoafaiga</u>, 150 Hawaiʻi 406, 421-22, 504 P.3d 324, 339-40 (2022).

Here, the charges that Duong had pled no contest to included, in pertinent parts:

**§ 134-24 Place to keep unloaded firearms other than pistols and revolvers; penalty[.]**

. . . .

(b) Any person violating this section by carrying or possessing an unloaded firearm other than a pistol or revolver shall be guilty of a class C felony.

**§ 134-25 Place to keep pistol or revolver; penalty[.]**

. . . .

(b) Any person violating this section by carrying or possessing a loaded or unloaded pistol or revolver shall be guilty of a class B felony.

**§ 134-27 Place to keep ammunition; penalty[.]**

. . . .

(b) Any person violating this section shall be guilty of a misdemeanor.

**§ 708-821 Criminal property damage in the second degree[.]**

. . . .

(2) Criminal property damage in the second degree is a class C felony.

Thus, the offenses included one class B felony, two class C felonies, and one misdemeanor. Under the statutory

7

framework set forth above, in conjunction with a DANC the Circuit Court had discretion -- upon considering the parameters of HRS § 853-1 and the factors set forth in HRS § 706-606 -- to impose a term of imprisonment for the class B felony of up to eighteen months, for the class C felonies of up to one year, and for the misdemeanor of up to six months.  The 90-day condition of imprisonment indicated by the Circuit Court, while undisputedly a significant burden on Duong, was well within the terms allowed for the offenses.

The transcript of the July 25, 2018 sentencing hearing clearly indicates that the Circuit Court's condition of imprisonment for the DANC stems from the court's focus on the circumstances attending the commission of the crime.  The court did not directly comment on Duong's likelihood to again engage in a criminal course of conduct, but expressed concern that Duong's conduct reflected "deep rooted anger problems."  The Circuit Court's comments on the circumstances included:

> THE COURT:  Okay.  So your workers, whoever's working on the house, called you that [trespasser] was back at your house once again.  And so you came rushing home, um, with your firearm in your vehicle and at least -- and I understand that you, first of all, asked her to basically leave.  And then she wouldn't leave.  And I guess you -- I guess when you kept asking her to leave and she wouldn't leave, then that's -- that's when it kinda escalated here.
> And, um, apparently you retrieved the gun from your vehicle.  I understand it was loaded.  That you loaded it. Um, put it in your pocket.  And that's when she kind of ran off to the side.
> And then you proceeded to grab a pick axe.  Yes?
>
> [Dispute on when and how the trespasser left]

8

THE COURT: Right. That's what I was thinking. She left. So she ran off on foot or whatever, she ran off on.

[Duong's counsel]: Right.

The court then considered Duong's specific actions:

THE COURT: Okay. So the problem I'm having now is you grab this pick axe and you start to smash her vehicle. You smash her rear window. You smash her front headlights. You go ahead dent the front hood. You damage the front bum -- bumper.

And to me it's one of those riot videos that you see on T.V. when these people rioting in the streets. And then people just walking down the streets throwing fireballs and getting bats and getting sticks and they start bashing people's property.

That's what came into my mind, Mr. Duong. This is your behavior. And I heard you say it was the, or else. And you just reached your limit. This is the, or else.

So you started taking it out on this -- on this vehicle. So you know what, you just -- my flabber is completely gasted. I don't know what else to say. You went overboard. You were out of control. You took -- you took this matter into your own hands.

Now, I know your attorney has said that you called the police before and basically nothing got done. So this is how you reached your limit. But for someone to have a gun, a loaded gun, not waving it around, but in their pocket. Someone to get a pick axe and start destroying property. And I'd love to see a picture of this destroyed van because apparently we're at $9,000.00 and change -- . . .

. . . .

THE COURT: . . . But you just -- you know, you just -- it was overboard. It was too much. You were beyond out of control, Mr. Duong.

. . . .

You can not take these matters into your own hands. Yes, we live in a very orderly society. Want to protect everyone's rights. Victim's rights. Defendant's rights. Your rights. [The trespasser's] rights. Everybody's rights deserves to be protected.

So you can't met [sic] out what you believe is to be justice by smashing her vehicle and having this firearm.

And I understand it was a registered firearm to you. And now I understand that you were taking it back and forth in your car because you didn't want it to get broken into and stolen.

But you had a firearm loaded in your possession and the, or else, is what bothers me. The or else. And that you reached your limit.

But maybe if the police hadn't come -- hadn't come at that particular time, I don't know what the what else would have been. What the limit would have been. I don't know. I don't know. Okay. And nothing happened. Nothing happened with the firearm. I get it.

. . . .

THE COURT:  . . . -- it was too much.  It was -- it was -- it was really overreacted, Mr. Duong.  I know you were fed up.  I get it.  You were fed up.  But you -- you overreacted.  And you damaged someone's property.  And you could have done more damage, but for the police came when they came.

Now the deal's kind of an unusual deal about this deferral and restitution.  No jail and things along that line.  And I was trying to compare your case.

[The Circuit Court then referenced a prior case sentencing in the court that day]  Very sim -- not similar, but he also had a firearm.  And he whacked the victim in the head.  And he threatened him.  And ended up taking his -- his cell phone and his keys.

And not -- not the same kind of damage that you did.  Your record's nowhere near [other case], but, um, I just can't help but thinking this is the tip of the iceberg.  And that you have some deep rooted anger problems that you got to get out of your system somehow.  So --

Duong's counsel reiterated that Duong did not actually pull the gun, and reiterated that this "sole incident" was a result of the trespasser coming back to Duong's property and "tormenting" him.  Duong's counsel said that "he lost it that day" but argued that it was "a one off kind of thing."  The Circuit Court's reaction to the argument was, "Put it mildly he lost it."  The court continued its explanation as to why the court determined that Duong should either serve 90 days in conjunction with a DANC or be sentenced to probation with no jail time:

THE COURT:  . . .

But the problem, Mr. Duong, is that you went too far.  You took it -- you took it to the violence -- the V level.  You went to the V word.  You went to the violence level.

You know and I know you didn't point the gun at her or shoot her or take the pick axe to her personally, but she's standing there, or in the -- in the near area.  And you take this pick axe and you start to attack her car, smashing windows, pounding on the hoods.  You know, taking out the front lights.

This is -- this is not -- this is crazy behavior.  This is over the top, overboard behavior.

And then you had this gun in your pocket that's loaded.  I'm not saying you pointed it at her.  I'm not

> saying you were going to use it on her.  But you felt strongly enough to get the gun from your vehicle, load it, put it in your pocket, and approach this vehicle and start to attack this vehicle.
>     That's -- that's the problem, Mr. Duong.  That -- that's the problem.

The Circuit Court considered further arguments of defense counsel as to other alternatives (community service, intermittent jail time), took a break in the proceedings to allow Duong to consult his wife, and ultimately, continued the sentencing hearing to allow Duong to research potential collateral consequences of not taking the deferral, subject to the 90-day jail term.  However, the Circuit Court was unwavering it its determination that, primarily, the nature and circumstances of the offense, and characteristics of the defendant as reflected in the circumstances, warranted the two alternatives identified by the court.

We conclude that there was sufficient factual basis for the court to determine to impose a term of imprisonment as a punishment, with a DANC or separately from a DANC, and neither determination would clearly exceed the bounds of reason or be in disregard of rules or principles of law or practice to Duong's substantial detriment.  When Duong elected to take the conviction, the Circuit Court, in its discretion, determined that four years of probation, with terms and conditions and without imprisonment, was sufficient punishment, and that decision also did not clearly exceed the bounds of reason or disregard rules or principles of law.  <u>State v. Pulgados</u>, 148 Hawaiʻi 361, 365, 477

P.3d 155, 159 (App. 2020) ("A judge has broad discretion in matters related to sentencing [and] a trial court's sentencing or resentencing determination will not be disturbed absent a 'plain and manifest abuse of discretion in its decision.'"). Accordingly, and based on the entire record in this case, we reject Duong's contention that the Circuit Court abused its discretion or otherwise erred in its consideration of Duong's motion for DANC.

For these reasons, the Circuit Court's August 2, 2018 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, June 14, 2022.

On the briefs:                          /s/ Lisa M. Ginoza
                                        Chief Judge
David A. Sereno,
for Defendant-Appellant.                /s/ Katherine G. Leonard
                                        Associate Judge
Gerald K. Enriques,
Deputy Prosecuting Attorney,            /s/ Clyde J. Wadsworth
County of Maui,                         Associate Judge
for Plaintiff-Appellee.